UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

NATIONAL UNION FIRE
INSURANCE COMPANY OF
PITTSBURGH, PA,

      Plaintiff,

   v.

LINDSEE HUNTER, et al.,

      Defendants.

CIVIL ACTION NO.
1:22-CV-04475-JPB

## ORDER

This matter comes before the Court on Lindsee Hunter's ("Defendant")

Motion for Partial Summary Judgment [Doc. 34] and National Union Fire

Insurance Company of Pittsburgh, Pa.'s ("Plaintiff") Motion for Partial Summary

Judgment [Doc. 40]. The Court finds as follows:

## BACKGROUND

### I.    Procedural History

Plaintiff initiated this action on November 9, 2022. [Doc. 1]. Plaintiff then

filed an Amended Complaint on December 27, 2022. [Doc. 11]. The Amended

Complaint brought a variety of claims against Defendant related to alleged misuse

of corporate credit cards belonging to Defendant's employer. Id. at 4–6.

Defendant filed a motion to dismiss, and this Court dismissed Plaintiff's fraud

claim but allowed the remaining claims to proceed.  [Doc. 13]; [Doc. 16].

Thereafter, Defendant failed to timely file an answer.  Plaintiff moved for default

judgment, but this Court denied that motion and granted Defendant's motion to set

aside default.  [Doc. 20]; [Doc. 24].  Defendant then filed an answer and the case

proceeded through discovery.  [Doc. 26].  Both parties filed motions for partial

summary judgment, and those motions are now ripe for review.

## II.    Facts

Plaintiff is an insurance company.  [Doc. 40-2, p. 1].  Plaintiff issued an

insurance policy to Madison Industries, Inc., a business operating in Georgia.  Id.

at 2.  The policy covered "losses sustained due to employee dishonesty."  Id.  This

case arises out of a particular loss that Plaintiff covered for Madison because of

Defendant's alleged actions.  Defendant was employed as the "controller" for

Madison until February 4, 2022.  Id.  In that role, she had financial responsibilities

that included oversight of the company's corporate credit cards.  Id.  This case

concerns whether Defendant made unauthorized purchases on company credit

cards that were covered by Madison's insurance policy.

Madison submitted an insurance claim to Plaintiff on March 28, 2022.  Id.

The claim was for an "employee dishonesty loss" of $99,161.44.  Id.  It described

the loss as stemming from "[u]nauthorized personal purchases on company credit

card" that were made by Defendant.  Id.  Madison submitted a spreadsheet to Plaintiff that detailed the amounts, card numbers, merchants and dates for the purchases.  Id. at 3.  After receiving the claim, Plaintiff retained an accounting firm to investigate the loss.  Id.  Plaintiff then executed an assignment and release agreement with Madison that paid Madison the amount of the loss (minus its deductible) and assigned all of Madison's claims against Defendant to Plaintiff.  Id. at 4.

Plaintiff then sent Defendant demand letters seeking repayment of the loss amount.  [Doc. 40-4, pp. 127–54].  Defendant did not respond or pay any sum to Plaintiff, so Plaintiff filed its complaint.  [Doc. 40-2, p. 4].  In Plaintiff's motion for partial summary judgment, it seeks summary judgment as to $39,032.77. [1] [Doc. 40-1, p. 5].  The Court will discuss additional facts related to this amount in the analysis below.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A material fact is

---

[1] Though the total alleged loss is $99,161.44, Plaintiff only seeks $39,032.77 in the instant motion and has reserved the right to seek the remaining amount at trial.  [Doc. 40-1, p. 1 n.1].

any fact that "is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). A genuine dispute exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Ultimately, "[t]he basic issue before the court on a motion for summary judgment is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Allen, 121 F.3d at 646 (quoting Anderson, 477 U.S. at 251–52).

The party moving for summary judgment bears the initial burden of showing that no genuine issue exists as to any material fact, "and in deciding whether the movant has met this burden the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party." Id. Where, as here, the parties file cross-motions for summary judgment, the facts are viewed in the light most favorable to the nonmoving party on each motion. James River Ins. Co. v. Ultratec Special Effects Inc., 22 F.4th 1246, 1251 (11th Cir. 2022). After the movant satisfies its initial burden, the burden shifts to the nonmovant who must then present evidence indicating that summary judgment is improper. Allen, 121 F.3d at 646. "A mere 'scintilla' of evidence supporting

4

the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (quoting Anderson, 477 U.S. at 252).  If the record, taken as a whole, cannot lead "a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

Under Georgia law,[2] "insurance is a matter of contract, and the parties to an insurance policy are bound by its plain and unambiguous terms."  Hays v. Georgia Farm Bureau Mut. Ins. Co., 722 S.E.2d 923, 925 (Ga. Ct. App. 2012) (quoting Old Republic Union Ins. Co. v. Floyd Beasley & Sons, 551 S.E.2d 388, 390 (Ga. Ct. App. 2001)).  "Where the terms and conditions of an insurance policy are clear and unambiguous, the court simply enforces the contract according to its terms, regardless of whether doing so benefits the carrier or the insured."  Allstate Ins.

---

[2] Georgia law applies to the insurance policy in this case because the insurance contract was to be performed in Georgia.  See Interface Kanner, LLC v. JPMorgan Chase Bank, N.A., 704 F.3d 927, 932 (11th Cir. 2013) ("In diversity cases, the choice-of-law rules of the forum state determine what law governs.").  In Georgia, "interpretation of a contract [is] governed by the substantive law of the state where the contract was made, except that where the contract is made in one state and is to be performed in another state, the substantive law of the state where the contract is performed will apply."  Calhoun v. Cullum's Lumber Mill, Inc., 545 S.E.2d 41, 44 (Ga. Ct. App. 2001)

Co. v. Airport Mini Mall, LLC, 265 F. Supp. 3d 1356, 1365 (N.D. Ga. 2017).  In

construing an insurance policy under Georgia law, the court is required to

"consider the policy as a whole, to give effect to each provision, and to interpret

each provision to harmonize with each other."  ALEA London Ltd. v. Woodcock,

649 S.E.2d 740, 745 (Ga. Ct. App. 2007) (citing O.C.G.A. § 13-2-2(4)).

**DISCUSSION**

**I.     Defendant's Motion for Partial Summary Judgment**

Defendant seeks partial summary judgment on the basis that the insurance

policy Plaintiff relies on does not, in fact, cover the loss at issue in this case.  She

contends that the policy includes a "credit-card exclusion," which excludes

coverage for all losses "resulting from the use or purported use of credit, debit, [or]

charge cards or the information contained on such cards."  [Doc. 34, p. 3].

Because the loss at issue is alleged to have occurred through the use of credit

cards, Defendant contends that the loss is excluded from the policy and Plaintiff

thus cannot recover because its payment to Madison was voluntary.  Id. at 4.

Plaintiff contends that Defendant's argument is a "basic misread" of the

insurance policy.  [Doc. 35, p. 2].  It argues that the credit-card exclusion applies

only to a particular coverage for "Computer Fraud", and that Madison did not

purchase this coverage.  Id. at 5–6.  According to Plaintiff, applying this language

to the entire policy rather than just to the Computer Fraud section would impermissibly distort the plain language of the policy.  Id. at 6.

As discussed above, "[w]here the terms and conditions of an insurance policy are clear and unambiguous, the court simply enforces the contract according to its terms."  Airport Mini Mall, 265 F. Supp. 3d at 1365.  Here, the plain terms of the policy show that the "credit-card exclusion" does not apply to the loss at issue in this case.  Madison's policy packet shows a list of eight possible insurance agreements that an insured could purchase from Plaintiff.  [Doc. 34-3, p. 3].  The only agreement that Madison had coverage for is "Employee Theft."  Id.  The remaining agreements—including the one for "Computer Fraud"—are listed as "Not Covered."  Id.  And the policy provides that when a particular agreement is not covered, that agreement's provisions are "deleted" from the policy.  Id.

A later portion of the insurance policy's text makes clear that the credit-card exclusion only applies to the Computer Fraud agreement.  The Computer Fraud agreement is identified in paragraph A.6 of the policy.  Id. at 6.  And the credit-card exclusion reads as follows:  "Insuring Agreement A.6 does not cover . . . Credit Card Transactions."  Id. at 8.  The Court finds that this text is unambiguous.  The exclusion applies to claims under the Computer Fraud agreement alone, not claims under any other agreement.  The credit card exclusion does not apply to the

7

Employee Theft agreement at issue here.  Defendant's contention therefore fails, and her motion for partial summary judgment, [Doc. 34], is **DENIED**.[3]

## II.   Plaintiff's Motion for Partial Summary Judgment

The Amended Complaint brings counts of conversion, breach of fiduciary duty, unjust enrichment and money had and received.  [Doc. 11].  Plaintiff moves for summary judgment as to each of those counts.  [Doc. 40-1, pp. 4–8].  In its motion, Plaintiff argues that the undisputed evidence shows that Defendant used Madison's corporate credit cards to pay for transactions that were associated with Defendant's personal accounts and residence.  Id. at 5.  Plaintiff includes several exhibits, and among these are records from various vendors that show these purchases.  [Doc. 40-4, pp. 164–69, 175–98, 204–08, 214–24, 235–59]; [Doc. 42-1].  The purchases in these exhibits total $39,032.77.

Defendant raises a variety of arguments as to how Plaintiff has not met its burden to show that there is no genuine issue of material fact.  First, she contends that a reasonable factfinder could conclude that she "did not have exclusive or unrestricted authority over corporate credit cards."  [Doc. 43, p. 2].  Second, she argues that "there was no written policy defining authorized versus unauthorized

---

[3] Plaintiff also appears to request certain forms of discovery in her motion.  Such requests are procedurally improper and are therefore **DENIED**.  See [Doc. 2, pp. 25–26] (stating procedure for discovery disputes).

use" of the cards.  Id.  Third, she argues that the transactions identified were not "clearly personal or improper."  Id.  Finally, she contends that Plaintiff has not established that she "personally made each transaction."  Id.

Defendant's first two arguments are irrelevant to the claims at issue.  Even if employees other than Defendant had access to Madison's corporate cards, it is undisputed that Defendant *did* have access.  None of Plaintiff's claims require proof that Defendant was the sole person with control over company cards.  Additionally, none of Plaintiff's claims require proof that a specific written policy was violated.  Thus, the lack of a written policy does not affect the availability of relief.

As for the latter two arguments, Defendant contends that Plaintiff has not met its burden to establish the facts that the purchases were "personal or improper" or that they were made by Defendant.  Again, the Court disagrees.  Plaintiff has carried its burden to present evidence showing the lack of any genuine factual dispute as to these issues.  The records of goods purchased show that the credit cards were used to purchase clothing, home goods, furniture, insurance for a Mercedes Benz, utility bills and fencing for a residential home—to name a few.  [Doc. 40-4, pp. 164–69, 175–98, 204–08, 214–24, 235–59]; [Doc. 42-1].  Moreover, the purchases were made in Defendant's name and were either

delivered to or purchased for her residential address. In such circumstances, the Court finds that no reasonable factfinder could conclude that these were purchases Madison had authorized for a business purpose. Nor could any reasonable factfinder conclude that the purchases were made by someone other than Defendant.

Since Plaintiff has satisfied its burden, the burden shifts to Defendant to produce evidence showing that summary judgment is improper. Allen, 121 F.3d at 646. Defendant has not introduced any such evidence. Accordingly, the Court finds that there are no genuine disputes of the material facts at issue with Plaintiff's claims. The Court will now consider the elements of each claim and whether the undisputed facts entitle Plaintiff to judgment as a matter of law.

**A. Conversion**

In order to establish a claim for conversion under Georgia law, the Plaintiff must show (1) title to the property or the right of possession, (2) actual possession in the other party, (3) demand for return of the property and (4) refusal by the other party to return the property. Trey Inman & Assocs., P.C. v. Bank of America, N.A., 702 S.E.2d 711, 716 (Ga. Ct. App. 2010). Though an action for conversion will generally not lie where the converted property is money, there is an exception

where the allegedly converted money is a "specific, separate, identifiable fund."

Taylor v. Powertel, Inc., 551 S.E.2d 765, 769–70 (Ga. Ct. App. 2001).

Here, the Court finds that the undisputed facts establish each element of conversion. To begin, a conversion claim can lie because each credit card used was a specific and identifiable fund of money. Furthermore, it is undisputed that Madison had title to that property. [Doc. 40-2, pp. 2–3]. And the evidence shows that Defendant thereafter had actual possession of the property. [Doc. 40-4, pp. 164–69, 175–98, 204–08, 214–24, 235–59]; [Doc. 42-1]. Plaintiff has also provided evidence that it demanded the money be returned and that Defendant refused to do so. [Doc. 40-4, pp. 127–54].

Defendant argues that this claim cannot succeed because there was no defined policy that the purchases breached and no evidence that the purchases were not authorized. As discussed above, these arguments are unconvincing. What is more, Georgia law disposes of these arguments. Under Georgia law, "it is immaterial that . . . dominion [over property] was exercised in good faith, for whoever meddles with another's property, whether as principal or agent, does so at his peril, and it makes no difference that in doing so he acts in good faith." Trey Inman, 702 S.E.2d at 716 (citation modified). Simply put, the law of conversion looks to whether property rights were interfered with, not whether a person

violated a policy or even whether they thought they were violating a policy.

Moreover, if "someone comes into lawful possession of personal property," there

"is no conversion" unless there is "a demand for [the property's] return and a

refusal to return the personal property." Taylor, 551 S.E.2d at 769.  Here, there

was a demand for return of the property, so Defendant was on notice that the

owner of the property wanted it back—in essence, that the property owner did not

view the purchases as authorized.

In sum, the evidence establishes that the elements of conversion are satisfied

here, and Defendant's arguments are unavailing.  Summary judgment is therefore

**GRANTED** as to this claim.

## B. Breach of Fiduciary Duty

Plaintiff's next claim is for breach of fiduciary duty.  Under Georgia law,

breach of fiduciary duty has three elements:  (1) the existence of a fiduciary duty;

(2) breach of that duty; and (3) damage proximately caused by the breach.  Nash v.

Studdard, 670 S.E.2d 508, 514 (Ga. Ct. App. 2008).  Plaintiff argues that, because

Defendant worked as Madison's controller and was responsible for the company's

financial operations, she "owed a fiduciary duty to Madison to oversee the

financial operations and corporate credit card usage and to refrain from stealing

from Madison." [Doc. 40-1, p. 6]. Defendant, on the other hand, argues that Plaintiff "has not established a clear duty" that she owed. [Doc. 43, p. 4].

Here, the Court agrees with Defendant. Plaintiff's argument is conclusory— that Defendant owed Madison a fiduciary duty because she was responsible for Madison's financial operations. [Doc. 40-1, p. 6]. Plaintiff does not identify a specific duty established by law that Defendant owed. Of course, a fiduciary duty does not necessarily have to be established by law; it can arise under the facts of a particular case too. Bienert v. Dickerson, 624 S.E.2d 245, 248–49 (Ga. Ct. App. 2005). However, whether such a duty exists is "generally a factual matter for the jury to resolve." Id. at 249. Plaintiff does not explain how or why the Court should find such a duty exists as a matter of law. It simply asserts that there is a duty. Given this cursory argument, the Court finds that Plaintiff has failed to establish the existence of a fiduciary duty as a matter of law and that the question is more properly reserved for a jury. Summary judgment is therefore **DENIED** as to this claim.

### C. Unjust Enrichment & Money Had and Received

Under Georgia law, to prevail on a claim for unjust enrichment, a plaintiff must ultimately show "(1) that it conferred a benefit on the defendant and (2) that equity requires the defendant to compensate for that benefit." Brooks v. Branch

Banking & Tr. Co., 107 F. Supp. 3d 1290, 1298 (N.D. Ga. 2015) (quoting Schütz Container Sys., Inc. v. Mauser Corp., No. 09-CV-3609, 2012 WL 1073153, at *35 (N.D. Ga. Mar. 28, 2012)).

As for money had and received, "a plaintiff must show (1) that a party has received money justly belonging to the plaintiff; and (2) that the plaintiff has made a demand for repayment which was refused." Sec. & Exch. Comm'n v. Price, No. 12-CV-2296, 2015 WL 11198937, at *6 (N.D. Ga. Mar. 31, 2015) (citing City of Atlanta v. Hotels.com, 710 S.E.2d 766, 770 (Ga. 2011)). "An action for 'money had and received' is the functional equivalent of an action for unjust enrichment." Id. at *6 n.5; see McCaughey v. Bank of America, N.A., 279 F. App'x 794, 797 (11th Cir. 2008) ("[Money had and received] is merely one form of action to recover damages based on unjust enrichment.").

The Court finds that Plaintiff is entitled to judgment on both claims. Defendant obtained a benefit—Madison's money—and used it to purchase items for her personal use. Defendant argues that transactions "associated with [her] residence" do not establish personal use or unjust benefit. [Doc. 43, p. 5]. She contends that these transactions "can include items used in connection with Defendant's job responsibilities, including work performed remotely or from home." Id. This argument strains credulity. The uncontradicted evidence shows

14

that the purchases at issue were plainly for Defendant's personal benefit—a fence for her house, car insurance, furniture, clothing and more. [Doc. 40-4, pp. 164–69, 175–98, 204–08, 214–24, 235–59]; [Doc. 42-1].

Moreover, Plaintiff demanded that the funds be returned, but Defendant refused. [Doc. 40-4, pp. 127–54]. Simply put, Defendant used the funds for herself even though they belonged to Madison and refused to repay them when confronted. This was unjust, and Defendant should be made to compensate for that unjust enrichment. Accordingly, summary judgment is hereby **GRANTED** as to these claims.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Partial Summary Judgment, [Doc. 34], is **DENIED**. Plaintiff's Motion for Partial Summary Judgment, [Doc. 40], is **GRANTED IN PART**. Plaintiff is entitled to judgment against Defendant in the amount of $39,032.77.

The parties are **HEREBY ORDERED** to file the Consolidated Pretrial Order required by Local Rule 16.4 within twenty-one days of this Order. The parties are notified that a failure to comply with this Order may result in sanctions, including dismissal of the case or entry of default judgment. In the event that the

15

parties fail to file a Consolidated Pretrial Order, the Clerk is **DIRECTED** to submit the case at the expiration of the twenty-one-day period.

If the parties would like a stay of this deadline to allow them to conduct mediation, they may file a motion to that effect.  The parties are reminded that the Court can refer this case to mediation before a Magistrate Judge at no cost.  If the parties would like such a referral, they may make such a request in the motion.

**SO ORDERED** this 8th day of May, 2026.

_____

J. P. BOULEE
United States District Judge

16